BONDS *v.* GOODWIN, et al.

No. 39955 February 13, 1956 85 So. 2d 480

*Hainon Miller,* Greenville; *J. Wesley Miller,* Rolling Fork, for appellant.

*Holland O. Felts,* Greenville; *Paul Nunnery,* Hollandale, for appellees.

McGEHEE, C. J.

The bill of complaint herein was filed by the appellant, Cora Bonds, a Negro woman, to cancel and set

aside a foreclosure sale made under a deed of trust on November 5, 1954, of two parcels of real estate, one consisting of approximately 200 acres of farm land and the other certain town lots on which a ''Negro cafe'' was operated in the town of Hollandale, all in Washington County, and which bill of complaint also asked for a partition of the property and that the complainant's one-half undivided interest therein as a tenant in common with Alex Yates at the time of the sale be charged with one-half of the indebtedness on the property (evidently meaning one-half of the indebtedness owing under the foreclosed deed of trust and certain prior liens together with the interest thereon at the time she purchased her one-half undivided interest by her recorded deed from James Claiborne on March 25, 1952) and the costs.

The bill of complaint also sought to have cancelled a declaration of homestead filed by Lettie Mae Arrington Claiborne, and a subordinate deed of trust held by the latter, as clouds upon the interest of the complainant. The trial court held that the foreclosure sale was good and valid, and dismissed the bill of complainant except as to the declaration of homestead filed by Lettie Mae Arrington Claiborne, which was cancelled as a cloud upon the title as determined in the decree appealed from. The other defendants to the suit were Abe E. Abraham, original beneficiary in the deed of trust which was foreclosed, and against whom no relief was sought and who is not a party to this appeal; J. H. Criswell, at whose instance the deed of trust was finally foreclosed; G. Ramsey Russell, trustee therein; Alex Yates, the tenant in common of the complainant at the time of the sale; C. B. Goodwin and Paul N. Nunnery, who were the purchasers of the property at the foreclosure sale on November 5, 1954, for the cash consideration of $5,207.81, and of which proceeds approximately $5,000.00 was paid to J. H. Criswell.

On January 10, 1952, James Claiborne and Alex Yates were admittedly the owners of a one-half undivided in-

terest each in the lands in question. On that day they, together with Robert Castleman and Hattie Castleman, who owned a life estate in the town property, executed the deed of trust in favor of Abe E. Abraham to secure the payment of an indebtedness amounting to $2,380.54, evidenced by two promissory notes, one for $1,200.00 as principal due December 1, 1952, and one for $1,180.54 as principal due December 1, 1953.

On March 25, 1952, James Claiborne, being already indebted to his mother, the appellant Cora Bonds, executed a warranty deed to her for his one-half undivided interest in the two parcels of land in consideration of her agreement to assume and pay his share of the indebtedness then existing on the land, and the cancellation of his pre-existing indebtedness to her. This deed was acknowledged by James Claiborne before the Chancery Clerk of Washington County. The deed is made an exhibit to the bill of complaint. There is a notation thereon between the signature of the grantor and the acknowledgment taken by the chancery clerk in the following words and figures ''Book 478 page 257''. It is asserted in the brief of the appellant, and the statement is unchallenged by the appellees, that this deed was immediately recorded. Counsel for appellees also conceded during the trial that the deed was placed of record.

The deed of trust of January 10, 1952, given by James Claiborne and Alex Yates, in which Abe E. Abraham is named as the beneficiary, recites that the said deed of trust is second and subordinate to a deed of trust on the farm land of $7,500.00 owing to N. D. Williams, on which there was a balance due of $5,000.00, and second and subordinate to a deed of trust securing an indebtedness to T. R. Sanders in the sum of $1,500.00 on which there was then owing a balance of $750.00. We presume that the appellant, Cora Bonds, intended to assume as a part of the consideration for the deed to her from James Claiborne one-half of the amount owing to Williams and one-half of the amount owing to Sanders.

The proof discloses without dispute that Cora Bonds paid to Abe E. Abraham the $1,200.00 note with interest which became due December 1, 1952, leaving unpaid the $1,180.54 note which was not due until December 1, 1953. Shortly after December 1, 1953, James Claiborne, J. H. Criswell and Lettie May Arrington, who was then living with James Claiborne under color of a marriage ceremony, all went to see Mr. Abraham at Vicksburg and paid to him out of some money contained in a paper sack and some additional funds of Criswell the full indebtedness then due Abraham, amounting to $2,180.54. It appears that Abraham had loaned James Claiborne an additional $1,000.00 after he had conveyed by recorded deed to the appellant, Cora Bonds, his one-half undivided interest in the two parcels of land in question. The deed of trust held by Abraham of January 10, 1952, did not provide for future advances of money or supplies to the grantors, but it did provide, in substance, that the grantors should pay any "other liens of whatsoever kind or description on all or any of the property herein conveyed due and unpaid", and that if they failed to do so the "legal holder of any of the indebtedness herein secured, whoever it may be, may pay the same and add the sum so paid, with 6% per annum interest thereon, to the amount of the indebtedness herein secured"; and further that if the grantors make "any default in the payment of the indebtedness secured by the said deeds of trust in favor of N. D. Williams and T. R. Sanders, described hereinabove, or breach any of the terms or conditions of said deeds of trust so as to place either of them in any danger of foreclosure, the beneficiary herein may take such steps as may be necessary to reinstate such deeds of trust and place them in current condition, and shall be secured hereby for any moneys expended by him in doing so just as the indebtedness named herein is secured, and at his option may declare such default in payment or such breach of condition to be such a breach

of this contract as to allow him to proceed to foreclose this deed of trust * * *".

The deed of trust also authorized the legal holder of the indebtedness thereby secured to protect his lien by the payment of any taxes due and unpaid, and in keeping the buildings on the property insured in compliance with the obligation of the grantors.

If the $1,000.00 collected by Abraham on December 1, 1953, in addition to the $1,180.54 with interest, had been shown to be money advanced to James Claiborne, instead of being advanced as a payment to protect the security of the beneficiary therein as against prior liens, etc., then the amount loaned to James Claiborne in addition to the $1,180.54 note, after he had conveyed his undivided interest in the land by a recorded deed to his mother, Cora Bonds, it was not secured by the deed of trust held by Abraham.

It is not shown how much of the $2,180.54 plus some accrued interest was paid by each of the parties James Claiborne, J. H. Criswell and Lettie Mae Arrington to Abraham, but the trial court was justified in finding from the proof that Mr. Criswell refunded to James Claiborne and Lettie Mae Arrington such part of the indebtedness to Abraham as they each had paid respectively on the occasion of the settlement with Abraham.

It is the contention of the appellant that when the indebtedness owing to Abraham was paid in full by these three parties, the lien of the deed of trust held by Abraham was thereby extinguished. However, it was not cancelled of record, and the notes held by Abraham from James Claiborne and Alex Yates were payable to him or bearer, and it is clearly shown that when the money was paid the notes and deed of trust were delivered by Abraham to Mr. Criswell at the request of James Claiborne, to be held by Criswell until he was reimbursed for the funds expended by him in paying the indebtedness

to Abraham. The receipt executed by Abraham showing that the indebtedness had been paid in full was also delivered to Criswell at the request of James Claiborne. We are of the opinion that Criswell had the right to foreclose the deed of trust at least to the extent of satisfying the indebtedness secured thereby, but that any money advanced by Abraham direct to James Claiborne after the latter had sold and conveyed his interest in the land to his mother, Cora Bonds, by deed of record, was not secured by the deed of trust, and that any money loaned to James Claiborne by Criswell after he acquired the deed of trust did not constitute a lien on the interest of the appellant, Cora Bonds, unless the same was paid under the authority of the deed of trust to protect the security against prior liens.

It further appears that on the first day of December, 1952, being the date on which the appellant, Cora Bonds, paid the $1,200.00 note to Abraham, she, together with Alex Yates and others, executed four notes for $1,000.00 each payable on the first day of December of the years 1953, 1954, 1955 and 1956, respectively, in favor of the appellee Lettie Mae Arrington or bearer, and secured the said notes by a deed of trust on the 200 acres of farm land here involved. It is alleged in the bill of complaint that this deed of trust was assigned to C. B. Goodwin and Paul N. Nunnery, and that such assignment was void. The answer of the two said defendants does not deny the fact of the assignment, but merely denies that the same was void. This deed of trust was of course subordinate to the deed of trust given on January 10, 1952, by James Claiborne and Alex Yates, and the lien of the subordinate deed of trust was extinguished by the foreclosure of the former deed of trust of November 5, 1954. However, this deed of trust in favor of Lettie Mae Arrington, and which is made an exhibit to the bill of complaint, appears to have been assigned on November 11, 1954, following the foreclosure

sale in question. The assignment does not appear in the record, but there is endorsed on the margin of the deed of trust the following: "For assignment of the within instrument see Book 552 page 346. This 11 of Nov. 1954. Arthur D. Brooks, Clerk, by M. F. Wilson, D.C." And on the back appears: "Filed 12-6-1954. A. D. Brooks, Clerk". In other words, it appears that the defendants C. B. Goodwin and Paul N. Nunnery had this deed of trust assigned to them after the foreclosure sale, the lien of which had been extinguished by such sale under the prior mortgage.

The appellant, Cora Bonds, testified that the deed of trust for $4,000.00 in favor of Lettie Mae Arrington was wholly without consideration so far as the appellant is concerned. Lettie Mae Arrington testified that she loaned the $4,000.00 to her alleged husband James Claiborne, and that he placed the money in the bank to the account of his mother, Cora Bonds, and that it was on this bank account that Cora Bonds gave to Abraham the check in payment of the $1,200.00 note on that date, but she does not claim to have been with Cora Bonds at the time the latter paid the $1,200.00 to Mr. Abraham, and Cora testified that she had money of her own.

A further contention of the appellant is that C. B. Goodwin and Paul N. Nunnery purchased the land at the foreclosure sale on November 5, 1954, for and on behalf of Alex Yates and as his agents thereunto duly authorized, and that the purchase so far as the appellant's undivided half interest in the land was concerned innured to her benefit since Alex Yates was her tenant in common at the time of the foreclosure sale. In law this is a good theory, but the complainant was unable to support the same by sufficient proof. Alex Yates testified in substance that he desired to stay on the property since he had equipment for the operation of the cafe and the farm land and that he was interested in seeing someone buy it who would not "kick him off" the property;

that he mentioned the matter to Mr. Goodwin on one occasion prior to the sale and told him that it would be a good buy, and mentioned it to Mr. Nunnery on another occasion prior to the sale, but that nothing was said between him and either of the purchasers in regard to their buying it in for him. Both Goodwin and Nunnery testified that they had no agreement or understanding or conversation with Alex Yates prior to the sale relating to any promise on their part to buy the property in their names for him. Nunnery testified that while he knew that the property was being advertised for sale, it was Mr. Goodwin who called him by telephone and suggested that they buy the property at the foreclosure sale, with Goodwin putting up the money, and the two of them dividing the profits on a resale, and with the understanding that Mr. Nunnery as an attorney would render any legal services needed in connection with the matter. Following the sale Yates rented the property from the purchasers and executed rent notes in that behalf.

Since Yates, Goodwin and Nunnery were the only three witnesses who knew anything about the agreement or lack of agreement between themselves, the only evidence to the contrary is a letter written on November 13, 1954, to one of the attorneys for the appellant, in which he stated among other things that: ''I simply bought subject property in at the foreclosure sale in my name and the name of a client but I am sure that you and your father understand that neither my client nor I have any interest in the property; we are simply trying to save same for Alex Yates because we considered it to be worth a good deal more than the amount in question at the sale, and no one except Alex seemed to be concerned about losing the property. I gave your father substantially the foregoing facts over the telephone, and as stated above, this actually constitutes all that I know about the entire matter. We are currently trying to refinance all indebtedness against subject premises for

Alex Yates, and if we are successful legal title till be put in the name of Alex Yates.''

As a witness on the trial Mr. Nunnery explained this letter to the chancellor in response to questions of appellant's counsel in regard thereto as follows: ''When I wrote you in the letter, substantially the same information which I had earlier given your father over the telephone,—when I said that neither my client,—referring to Mr. Goodwin,—nor I have any interest in the property,—this is what I meant: The property in question consisted of approximately 200 acres of farm land in Black Bayou area, which in my judgment is not very good farm land,—and a negro Cafe located in what is known as ''Blue Front property'' in Hollandale; I wanted it thoroughly understood that I had no interest in owning such property as that, towit: 200 acres of farm land, in Black Bayou area, and a Cafe—Blue Front, Hollandale, —that's what I meant—that I was not interested in owning the property, I did not mean that I was not financially interested, but that I did not buy it to keep.''

The chancellor evidently accepted the explanation of the letter by Nunnery as being correct and we are unable to say that he was manifestly wrong. The explanation seems to be reasonable, and even though they may have tried after the sale to refinance the property so as to sell it to Yates at a profit such fact did not mean that they had any agreement or understanding with him in advance to put up $5,207.81 for him and wait for him to pay it back through his own efforts or resources.

Finally it is contended by the appellant that the foreclosure sale was null and void for the reason that the same was not conducted by the trustee named in the deed of trust nor by a substituted trustee. The proof discloses that the sale was conducted in the name of the original trustee who signed the notice of sale and the trustee's deed, and that the attorney for the holder of deed of trust merely acted as agent for the trustee in making the sale at the courthouse.

But since it is undisputed that the trustee paid about $5,000.00 of the proceeds of the sale to the defendant Criswell, and the record now before us fails to disclose that he held a lien against the land for more than $1,180.54 with interest thereon, together with a ten percent attorney's fee, a five percent trustee's fee and the cost of foreclosure, on account of the facts in the case not having been fully developed, it seems that instead of dismissing the bill as against Criswell and the trustee, the case should have been remanded to Rules for the ascertainment of how much of the $5,000.00 indebtedness claimed by Criswell as holder of the deed of trust was advanced by Abraham to protect the security against the prior liens while he held the deed of trust and later by the defendant Criswell for that purpose during the period that he held the deed of trust prior to the foreclosure.

The bill of complaint contains a prayer for general or for special relief, and we are of the opinion that the same should not have been dismissed as against the trustee and Criswell without a development of the facts in regard to what part of the proceeds of the sale should have been paid over by the trustee to the holder of the only lien that was foreclosed.

From the foregoing views it follows that we are of the opinion that the bill of complaint was properly dismissed as to the defendants Abraham, Yates, Goodwin and Nunnery, and that the declaration of homestead on the part of Lettie Mae Arrington Claiborne was properly cancelled, since no proof was offered to support the same, and that the cause should be reversed and remanded as against the trustee and J. H. Criswell for a further development of the facts in the interest of equity and justice.

Affirmed in part, reversed in part and remanded.

*Hall, Lee, Holmes* and *Ethridge,* JJ., concur.